UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:14-CR-032 JD |
| | ) | 3:18-CV-245 JD |
| WANDA C. SHORTER | ) | |

## OPINION AND ORDER

Defendant Wanda C. Shorter was convicted by a jury of committing health care fraud (Count 1) and aggravated identity theft (Counts 2-4).[1] She was sentenced to seventy-five months of imprisonment (which represented the low end of the applicable guideline range)[2] and two years of supervised release. Shorter was also ordered to pay restitution to Indiana Medicaid in the agreed amount of $1,340,284.32. On appeal, Shorter challenged in relevant part the sufficiency of the evidence as to Counts 2-4, but the Seventh Circuit rejected this argument because "the government submitted a substantial amount of evidence to support the convictions for Counts 2-4." *United States v. Shorter*, 874 F.3d 969, 977–78 (7th Cir. 2017).

Shorter now seeks to vacate her convictions and sentence under 28 U.S.C. § 2255. She argues that her attorney, Mr. Jay Stevens, was ineffective during trial for failing to object to the

---

[1] Count 1 alleged that between 2011 and early 2014, defendants knowingly engaged in a scheme to defraud Indiana Medicaid in violation of 18 U.S.C. § 1347 by requesting payment for services and transportation never actually provided, or if provided, for higher payments than justified by actual services and transportation provided. Counts 2 through 4 of the indictment charged the defendants with violating 18 U.S.C. § 1028A by knowingly using "without lawful authority a means of identification of another person during and in relation to health care fraud . . . and wire fraud." In Count 2, defendants were charged with fraudulently using the identification of C.C. (later identified as Cassamdra Cook) in August 2012, while Counts 3 and 4 charged them with fraudulently using the identification of a different C.C. (later identified as Chitika Cox) in June and August 2013.

[2] Shorter faced a guideline range of 51-63 months of imprisonment for her conviction under § 1347, and a minimum statutorily mandated consecutive two-year term of imprisonment for her three convictions under § 1028A.

admission of the government's summary Exhibits 35 and 40. Shorter also alleges that Mr. Stevens was ineffective during sentencing for: (1) failing to object to her receipt of a two-level enhancement under guideline § 3B1.3 for abusing a position of trust; and (2) failing to advise her of the supervised release conditions proposed by the presentence investigation report [DE 84, hereinafter, "PSR"] in paragraphs 89-99.

For the following reasons, the Court finds that Shorter is not entitled to relief and that no hearing is required on these claims, so it denies the petition. *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) ("A hearing, though, is not required when 'the files and records of the case conclusively show that the prisoner is entitled to no relief'") (quoting 28 U.S.C. § 2255(b)).

## I. FACTUAL BACKGROUND

In early 2011, Shorter, already a licensed nurse, formed Empowerment Non-Emergency Medical Transportation, Inc. to provide transportation services to Medicaid clients. In April 2011, Shorter began submitting invoices for Empowerment's services. Indiana Medicaid provides reimbursements for health-related transportation services to eligible patients. The provider of those services agrees to follow Medicaid's billing policies and to seek reimbursement for only medically necessary and truly rendered services. To ensure compliance, transportation providers must submit bills by using a unique Medicaid provider identification number and must maintain trip tickets that include the recipient's name and identification number, date of transport, type of services rendered, whether it was one-way or round trip, and the mileage driven. Each type of service is assigned a Medicaid code used for reimbursement.[3] The service

---

[3] The relevant codes, per the testimony of James Waddick, Jr., are:
• T 2003: "ambulatory" patient who does not need to ride in a wheelchair;
• T 2001: attendant or parent who travels with an ambulatory patient;
• A0130: "nonambulatory" patient who must be transported in a wheelchair;
• A0130 TK: attendant or parent who travels with a nonambulatory patient;

2

provider submits the applicable codes to Medicaid, which reimburses according to set rates specific to the type of service provided. For instance, Medicaid reimburses twice as much if the patient is wheelchair-bound, and it provides additional reimbursement without prior authorization when an attendant also rides or when rides are more than twenty but fewer than one hundred miles round-trip. Empowerment billed and received Medicaid reimbursements using these codes until early 2014.

To prove that Shorter was guilty of the charges, the government submitted the following evidence, as summarized by the Seventh Circuit on Shorter's direct appeal:

> To prove the allegations in Count 1, the government submitted evidence of: (1) Shorter's personal involvement in Empowerment's billing practices; (2) the results of a September 2013 Indiana Attorney General Investigation into Empowerment's billing practices; (3) [the results of] an October 2013 FBI search [and seizure] of Empowerment's records; and (4) the experiences of Empowerment employees and of clients who used its services. As for Shorter's personal involvement, an FBI agent testified that Shorter confirmed during an interview her ownership of Empowerment, as well as her training and comfort with Medicaid billing. Shorter also told the agent that her aunt, Annette Gates, did some of Empowerment's Medicaid reimbursement requests between April 2012 and October 2013. Moreover, there was substantial evidence that Shorter personally trained Aunt Annette and a cousin, Lakesha Gates, on how to prepare Medicaid bills.
>
> Specifically, both Annette and Lakesha testified that: (1) they submitted bills for Medicaid reimbursement in accordance with Shorter's instructions; (2) they had no knowledge about the Indiana Medicaid billing process before beginning work for Empowerment; and (3) they received no formal training beyond Shorter's instructions. They both further testified that Shorter taught them to use the same four codes for every trip: transport of a nonambulatory patient, when another client is already in the vehicle, with an attendant and more than 20 miles round-trip.
>
> Multiple agents involved in the Indiana Attorney General's September 2013 investigation also testified to arranging for transportation services with

---

• A0130 TT: nonambulatory patient the provider picks up when a Medicaid client is already in the vehicle; and
• A0425 U5: transport of a nonambulatory patient for more than twenty, but less than one hundred, miles round-trip.

Empowerment using fake names [like David Holtcamp, Jennifer Jones, and Shayna Lawson] but real Medicaid identification numbers. Each agent arranged for and took one-way trips without use of a wheelchair or presence of an attendant. Nevertheless, Empowerment billed each of these transports as round-trip for a wheelchair-bound client with an attendant. Similarly, there was testimony that trips of 3.4 miles and 4.2 miles were billed by Empowerment for 77 miles and 40 miles, respectively. An agent further testified that despite cancelling a trip, Empowerment later billed for the 40-mile transport of a wheelchair-bound client with an attendant. Finally, the agents testified that Empowerment submitted bills for their transport in June, July, and August 2013, well before they began requesting transportation. [Even more so, false billings were submitted by Empowerment even after the execution of the warrant in late October 2013].

As further proof of Count 1, twelve former clients and three former drivers testified about their actual experiences with Empowerment. This testimony was also inconsistent with Empowerment's actual billings for those same transports as reflected in government summary exhibits. Among other things, these exhibits showed that Empowerment coded transports to claim a wheelchair-bound patient, round-trips, and attendant trips, while only one client, Chitika Cox, testified that she used a wheelchair, and then only for one week at the end of 2013. Clients further testified that their trips with Empowerment were often one-way, not round-trips as coded, and only two of the twelve clients testified to using an attendant.[] This client testimony was confirmed by former Empowerment drivers. For example, one former driver testified that in two months driving for Empowerment, she had three to five wheelchair patients and one patient who needed an attendant. A second driver testified that between five and ten percent of her riders needed an attendant, while a third driver testified that attendants were not frequently present during trips. Yet for each trip, defendants submitted reimbursement requests seeking compensation for these additional services.

To prove Counts 2-4, the government submitted additional testimony and documentary evidence with respect to the "C.C." references in the indictment, including that "C.C." stood for Cassamdra Cook in Count 2, and for Chitika Cox in Counts 3 and 4. Without objection, the government also submitted Exhibits 18 and 20, which included Empowerment's trip tickets from Cook and Cox trips, respectively, as well as Exhibits 35 and 40, which were summary charts, respectively entitled "Empowerment's Billings for Chitika Cox" and "Empowerment's Billings for Casamdra[sic] Cook."

At trial, Chitika Cox acknowledged using Empowerment to transport her to dialysis appointments three times a week, but testified that except for one week at the end of 2013, she never used a wheelchair, and she never traveled with an attendant. For five of her scheduled trips during the period that Empowerment billed Indiana Medicaid for this transport, Cox cancelled altogether, and Empowerment did not drive her to dialysis. Specifically, Empowerment's May 6,

4

> 17, 22, and June 10 and 19, 2013, trip tickets showed that Cox cancelled, and her medical records confirm that she did not appear for her medical appointment on those dates. However, the government submitted evidence that Empowerment billed each of those dates as round-trip, wheelchair trips with an attendant. Similarly, the trip tickets from May 1, 10, 29 and June 5, 2013, show that Cox either did not appear or did not list any mileage, but Empowerment billed those trips as round-trip, wheelchair transports as well.
>
> In addition, Cook testified that she used Empowerment on a regular basis for transport to a standing appointment on Tuesdays at 5 p.m., but that she did not use a wheelchair [or need an attendant]. Because her mother would always pick her up, Cook also testified that these Tuesday trips were always one-way. Nevertheless, Empowerment billed two of these appointments as wheelchair trips on the wrong dates, with Cook as both a primary and secondary passenger.

*United States v. Shorter*, 874 F.3d 969, 972–73 (7th Cir. 2017). For her part, Shorter's defense was emphasized through cross-examination of the witnesses where Mr. Stevens attempted to convey that Shorter denied being responsible for Empowerment's billing errors and for the drivers' failure to submit adequately documented trip tickets. Despite this, the jury convicted Shorter on all counts.

At sentencing, Shorter admitted under oath that she had received and reviewed a copy of the PSR, which included the proposed conditions of supervised release along with their justifications. She also acknowledged that she had discussed these matters with Mr. Stevens. Mr. Stevens lodged a single objection to the PSR with respect to the loss amount and successfully obtained a two-level deduction from the sixteen-level enhancement proposed by the PSR. Shorter also received uncontested two-level enhancements for defrauding a government health care program of over one million dollars and for abusing a position of public trust. The Court then rejected Mr. Stevens' request pursuant to 18 U.S.C. § 3553 for imposition of a below guideline sentence; and instead, the Court imposed a sentence at the low end of the applicable guideline range. Shorter unsuccessfully appealed her conviction and then timely filed a motion to

vacate her convictions and sentence under 28 U.S.C. § 2255. Her motion has been fully briefed and the Court GRANTS her unopposed request to supplement her original motion [DE 134].

## II. STANDARD OF REVIEW

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

## III. DISCUSSION

Shorter offers three grounds in support of her motion which rely only on her sworn statements. First, she argues that government's summary Exhibits 35 and 40 are inaccurate because the underlying billings or invoices (which Shorter has not provided; indeed, has not even identified) would show that Medicaid was never billed by Empowerment for transportation services; and therefore, Mr. Stevens ought to have objected to their admission at trial. Second, Shorter alleges that she should not have received a two-level enhancement for abusing a position of trust; and therefore, Mr. Stevens ought to have objected to application of the enhancement at sentencing. Third, Shorter contends that Mr. Stevens failed to warn her that the Court intended to impose overly broad and inapplicable supervised release conditions; and therefore, Mr. Stevens

should not have waived the Court's reading of those conditions at sentencing. Shorter makes each of these arguments through the lens of an ineffective-assistance-of-counsel claim.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that her counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) that she was prejudiced by the deficiencies in her counsel's performance, meaning that there is a reasonable probability that the results of the proceeding would have been different with effective representation. *Strickland v. Washington*, 466 U.S. 687 (1984). To demonstrate prejudice in the trial context, Shorter must show that trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Cooper v. United States*, 378 F.3d 638, 642 (7th Cir. 2004). In the sentencing context, a defendant must show that there is a reasonable probability that the results of the sentencing hearing would have been different but for the ineffective assistance. *Fuller v. United States*, 398 F.3d 644, 650 (7th Cir. 2005).

**A.      Summary Exhibits 35 and 40**

Shorter contends she received ineffective assistance because her attorney failed to object to the admission of government Exhibits 35 and 40 (and instead, stipulated to their admission), despite knowledge that the underlying documents were not going to be identified by a testifying witness or admitted into evidence at trial. Exhibits 35 and 40 consist of charts that summarize Empowerment's Medicaid billings for Cassamdra Cook and Chitika Cox. Shorter alleges that these summary exhibits are inaccurate because the actual bills or invoices underlying Counts 2-4 were either (1) never sent to Medicaid; or, (2) if sent to Medicaid, then the bills were for medical services provided by physicians and not transportation services rendered by Empowerment

7

(despite evidence of payment from Medicaid to Empowerment). Again, Shorter makes these contentions without further documentary proof or even specific reference to the documents.

In response, the government submits the affidavit of Mr. Stevens who attests that the decision not to attack the underlying documents was a matter of trial strategy because the documentary evidence of erroneous billings was overwhelming [DE 131-1]. They also argue that Shorter authorized the stipulation. Thus, the trial strategy adopted was to let Exhibits 35 and 40 come into evidence without objection, while arguing that Shorter had no intention to defraud the government; rather, any errors were the result of confusion or were someone else's doing.

Shorter retorts [DE 134] that she never agreed to the admission of these summary exhibits without questioning their authenticity and that Mr. Stevens should have conducted additional investigation into the underlying documents. She makes this argument even though she was present during the final pretrial conference where the stipulation[4] regarding the authenticity of the exhibits was discussed and agreed upon.

As explained below, the Court resolves this issue on the trial record alone without reliance on Mr. Stevens' affidavit which was submitted by the government in response to the § 2255 petition. First, and generally speaking, summary exhibits need not be supported by the separate admission of their underlying documents. Second, even had Mr. Stevens lodged an objection to the admission of Exhibits 35 and 40, the government's other trial evidence amply supports Shorter's convictions (and in fact, further supports the accuracy of Exhibits 35 and 40).

---

[4]Any argument by Shorter that the stipulation regarding the authenticity of the government's exhibits [DE 51] is invalid because it only contains electronic signatures is without merit because handwritten signatures are not required. *See* N.D. of Ind. L.R. 5-1; CM/ECF Civil and Criminal User Manual; *see also Becker v. Montgomery*, 532 U.S. 757, 763 (2001) ("We do not doubt that the signature requirement can be adjusted to keep pace with technological advances.").

The documents underlying government Exhibits 35 and 40 were not admitted into evidence, but they did not have to be. Federal Rule of Evidence 1006 allows a court to admit into evidence summaries of "voluminous writings . . . that cannot conveniently be examined in court," provided that all parties have had an opportunity to examine the documents summarized. Rule 1006 does not require admission of the documents underlying a summary exhibit; indeed, the rule's purpose is to obviate the admission of voluminous documents. Committee Comment to Seventh Circuit Pattern Criminal Jury Instruction 3.16. Nor does Shorter contend that the defense did not have the opportunity to examine the documents underlying Exhibits 35 and 40. Thus, any objection to Exhibits 35 and 40 premised on the fact that not all of the underlying documents were identified by a witness or offered into evidence would have been meritless (assuming for a moment the accuracy of the summary exhibits). As a result, Mr. Stevens' performance was not deficient in this respect, nor could his lack of an objection have influenced the outcome of Shorter's trial. *See Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001) ("If evidence admitted without objection was admissible, then the complained of action fails both prongs of the *Strickland* test: failing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted.").

Yet, the Court must also address Shorter's claim that the actual billing documents or invoices underlying Exhibits 35 and 40 (which have not been submitted or identified) would have proven the inaccuracy of these summary exhibits. More specifically, she claims that the billings which were the subject of Counts 2-4 were never summitted to Medicaid by Empowerment, and so they should have been presented to the jury for its consideration. However, Shorter's allegations are belied by the trial record beyond Exhibits 35 and 40.

Investigators with the Office of the Indiana Attorney General's Medicaid Fraud Control Unit, Lisa Sweatland and Sandy Weston, testified during trial. These witnesses acknowledged that they personally analyzed the trip tickets seized during the execution of the search warrant on Empowerment (government's Exhibit 20) and compiled various summaries of Empowerment's Medicaid billings. They further provided testimony that was consistent with the billings and payments reflected in government's Exhibit 19.[5]

Relevant to Count 2, their testimony established personal familiarity with trip tickets dated August 7, 2012 and August 21, 2012 for Cassamdra Cook, which were introduced into evidence as government's Exhibit 18. The investigators' testimony (and the trip tickets) revealed that the August 7th trip was for a one-way transport because Cook was getting a ride home from someone else, while the August 21st trip was supported by documented mileage for only one-way. Despite this evidence, government's Exhibit 19 (which Shorter does not contest the accuracy of) revealed that Empowerment billed Medicaid using its Medicaid provider number on August 9th for the August 7th trip and on August 24th for the August 21st trip, and that those billings were for round-trip transport of a nonambulatory client, Medicaid recipient Cassamdra Cook. These round-trip billings were submitted to Medicaid by Empowerment despite Cook's trial testimony that she only took one-way trips with Empowerment and never needed a wheelchair. Testimony by Cook's mother, Clara Jones, corroborated the fact that Cook only took one-way trips because she drove Cook home.

---

[5] Government's Exhibit 19 consisted of summary charts that identified thousands of claims paid by Medicaid to Empowerment, along with detailed information such as client identifying information; dates of service, billing, and payment; amounts billed, allowed, and paid; Medicaid codes used; and the recorded number on the checks issued.

Relevant to Counts 3 and 4, the investigators' testimony established personal familiarity with trip tickets dated June 10, 2013 and June 19, 2013 for Chitika Cox, which were introduced into evidence as government's Exhibit 18. The investigators' testimony revealed that Cox's June 10th trip ticket indicated that the trip was canceled. But based on their investigation, it was discovered that Empowerment had in fact billed Medicaid (under the name of Chitika Cox using Empowerment's Medicaid identification number) on August 16, 2013, for round-trip transportation of a nonambulatory client with an accompanying attendant. In addition, although the June 19th trip ticket indicated that Cox did not come outside to catch her ride, on June 21, 2013, Empowerment billed Medicaid for services rendered. And per government's Exhibit 19, Empowerment billed Medicaid in June 2013 for at least eight round-trips of a nonambulatory client using Cox's Medicaid information. Ultimately, the testimony of Cox established that she canceled many trips, did not require an attendant, and only used a wheelchair for a very short time at the end of 2013.

Accordingly, even if the Court had sustained an objection to government Exhibits 35 and 40, the government's other trial evidence amply supports Shorter's convictions. In other words, subtracting Exhibits 35 and 40 from the government's proof would not have altered the overwhelming weight of evidence submitted against Shorter at trial. Alternatively, the testimony and other exhibits introduced at trial support the accuracy of Exhibits 35 and 40, and any objection to their admission would have been frivolous. Thus, Shorter fails to establish that she was prejudiced by her attorney's decision not to object to government Exhibits 35 and 40. Her ineffective assistance claim on that ground fails.

**B.      Sentencing Enhancement for Abuse of Trust**

Shorter next argues, without much explanation, that Mr. Stevens should have objected to the Court's imposition of a sentencing enhancement for abusing a position of trust consistent

with guideline § 3B1.3. The Court surmises that Shorter's contention appears based on the already rejected argument that had Mr. Stevens objected to the admission of government Exhibits 35 and 40, then she would not have been convicted of Counts 2-4. And in turn had she not sustained convictions for aggravated identity theft, then she would not have received the sentencing enhancement.

But the Court has already concluded that Shorter's convictions for aggravated identity theft were amply supported by the trial record. Accordingly, for the reasons previously stated, the Court concludes that Shorter is unable to succeed on her ineffective assistance claim in this respect.

Moreover, the enhancement was properly applied and can't support a claim of ineffectiveness. A two-level enhancement under § 3B1.3 applies if "the defendant abused a position of public or private trust" in committing the offenses. The application notes state "an adjustment under this guideline shall apply to the following: . . . [a] defendant who exceeds or abuses the authority of his or her position in order to obtain, transfer, or issue unlawfully, or use without authority, any means of identification." § 3B1.3 n.2(B). "Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7). *Id*. In turn, § 1028(d)(7) indicates that "means of identification" includes "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—(A) name, . . . [or] official State or government issued driver's license or identification number."

The facts of this case fall plainly within the scope of application note 2(B). Shorter abused the authority of her position as owner of Empowerment by using more than five hundred Medicaid patients' identifying information, without authority, to file fraudulent claims for payment on behalf of her company. *See, e.g., United States v. Abdelshafi*, 592 F.3d 602, 611–12

12

(4th Cir. 2010) (applying an abuse of trust enhancement based on the commentary in application note 2 to a defendant who abused the authority of his position by using Medicaid patients' identifying information, without authority, to file fraudulent claims for payment). Furthermore, Shorter's abuse of trust significantly facilitated her commission of aggravated identity theft, as it granted her access to the patient identifying information necessary to file fraudulent billing claims. *See id*.

Given this, Mr. Stevens had "no duty to make a frivolous argument" by objecting to the abuse of trust enhancement, *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003*), overruled on other grounds*, and indeed was barred by the rules of professional ethics from doing so, *see Smith v. Robbins*, 528 U.S. 259, 272 (2000). Thus, Shorter has failed to present any non-frivolous objection that her trial counsel failed to make to the abuse of trust sentencing enhancement that would have resulted in a more favorable sentence. *See Fuller*, 398 F.3d at 651–52. Because there is no merit to the claim that Mr. Stevens' performance was deficient and because there is a complete failure to demonstrate any possibility that Shorter suffered prejudice as a result of her trial counsel's performance during sentencing, her § 2255 motion cannot succeed in this respect.

## C. Supervised Release Conditions

Finally, Shorter argues that Mr. Stevens rendered ineffective assistance in connection with the explanation provided regarding her supervised release conditions. But this argument is easily dispensed with as lacking merit.

First, the dispositive facts underlying this claim have already been addressed at a hearing—the sentencing hearing—and Shorter's sworn statements at that hearing preclude relief on this claim. After Shorter took an oath to tell the truth, the following exchange took place during her sentencing hearing:

> THE COURT: . . .Mr. Schmid, did you receive the entire presentence report including the proposed conditions of supervised release?
>
> MR. SCHMID: Yes, I did, Your Honor.
>
> THE COURT: Thank you. Same question, Mr. Stevens.
>
> MR. STEVENS: Yes, Your Honor.
>
> THE COURT: Did you have an opportunity to discuss those things with Ms. Shorter?
>
> MR. STEVENS: We did, Your Honor.
>
> THE COURT: Thank you. Ms. Shorter, did you receive a copy of the presentence report which included the proposed conditions of supervised release?
>
> THE DEFENDANT: Yes, Your Honor, I did.
>
> THE COURT: Okay. Did you have an opportunity to review those things?
>
> THE DEFENDANT: Yes, I did, Your Honor.
>
> THE COURT: And did you discuss them with your attorney, Mr. Stevens?
>
> THE DEFENDANT: Yes, I did.

[DE 106 at 5]. And later during the sentencing hearing, this was said:

> THE COURT: . . . As to the conditions of your supervised release, the Court has made an independent judgment based upon the 3553(a) factors discussed as to the appropriateness of the conditions with reference to yourself. I find that the following conditions of supervision are reasonably related to the nature and circumstances of the offense of conviction, to the history and characteristics of yourself, and to the purposes of sentencing, other than punishment; that they involve no greater deprivation of liberty than reasonably necessary for the relevant purposes of sentencing; and that, where applicable, they are consistent with the policy statements of the Sentencing Commission. Moreover,

the Court believes these conditions are justified by the rationales attached to each, as stated in the presentence report. While on supervised release, the defendant shall comply with the conditions of supervised release that this Court now adopts as set forth in paragraphs 89 through 99 of the presentence report . . . Does either party have any objections to these conditions? Mr. Schmid?

MR. SCHMID: No, Your Honor.

THE COURT: Mr. Stevens?

MR. STEVENS: No, Your Honor.

THE COURT: Thank you. Mr. Stevens, does the defendant want me to read to her each of the conditions of supervision, or does she waive that reading?

(Attorney-client discussion held off the record.)

MR. STEVENS: We'd waive that, Judge.

THE COURT: Okay. Thank you. I would also remind the probation department that within 72 hours of Ms. Shorter's placement on supervision after release from custody, the defendant shall be required to report in person to the nearest supervision unit of the probation office. During that meeting, the probation officer is directed to remind the defendant of the conditions of her supervision and also to consider whether to recommend to the Court any modifications of or additions to those conditions in light of any changes in her circumstances since the sentencing hearing.

[DE 106 at 78-80].

Shorter does not attempt to account for these previous sworn statements which indicate that she reviewed and discussed with her attorney the conditions of supervision and the rationales for them. The record also shows that she discussed with Mr. Stevens whether to waive their re-

reading by the Court. Accordingly, the Court need not (and does not) consider Mr. Stevens' affidavit in reaching its conclusion that Shorter is not entitled to a new hearing on her § 2255 petition to show that she perjured herself at a prior hearing. *See, e.g., Thompson v. United States*, 732 F.3d 826, 829 (7th Cir. 2013); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005).

In addition, Shorter fails to point out a single problematic condition, or how a re-reading of those conditions already listed in the PSR would have assisted her. Nor has Shorter bothered to provide an explanation as to why she believes any particular condition was inappropriately imposed. Thus, Shorter has not presented sufficient facts to support her claim. Having said that, should Shorter's circumstances change such that a specific condition ought to be reconsidered, nothing prevents her from seeking an amendment of the conditions consistent with 18 U.S.C. § 3583(e). *United States v. Neal*, 810 F.3d 512, 516 (7th Cir. 2016). Ultimately, Shorter is unable to show that Mr. Stevens acted deficiently with respect to her supervised release conditions, or that she suffered some prejudice relative to their imposition. Therefore, the Court denies Shorter's motion.

### IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4

16

(1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). Here, for the reasons just discussed, the Court does not find that Shorter has made a substantial showing of the denial of any constitutional rights, or that any issues in this motion are adequate to deserve encouragement to proceed further. The Court therefore denies the issuance of a certificate of appealability.

The Court advises Shorter that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. The Court further advises Shorter that any notice of appeal of this judgment must be filed within 60 days after the judgment is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) (stating that "the time to contest the erroneous denial of [the defendant's] first § 2255 motion was within 60 days of the decision").

## V.  CONCLUSION

For the reasons stated herein, the Court GRANTS Shorter's motion to supplement [DE 134], DENIES her motion for relief under § 2255 [DE 120], and DENIES the issuance of a certificate of appealability. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED:  December 11, 2018

                                              /s/ JON E. DEGUILIO
                                              Judge
                                              United States District Court